IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WOODY K. LESIKAR | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. _____ |
| | § | |
| HARRIS COUNTY, TEXAS AND | § | |
| HARRIS COUNTY DEPUTY SHERIFF | § | |
| CHRISTOPHER D. ROSS, IN HIS | § | |
| INDIVIDUAL AND OFFICIAL CAPACITY | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE PRESIDING UNITED STATES DISTRICT JUDGE OF SAID COURT:

COMES NOW, Woody K. Lesikar, ("LESIKAR") hereinafter referred to as Plaintiff complaining of Harris County, Texas ("HARRIS COUNTY") and Harris County Deputy Sheriff Christopher D. Ross ("ROSS"), In His Individual and Official Capacity, hereinafter referred to as Defendants, and for cause of action against said Defendants, would show this Court the following:

### JURISDICTION, VENUE AND FACTS FOR SERVICE

I.

1. Plaintiff, Woody K. Lesikar, is a natural person, aged 75, who at all times complained of in this Complaint resided at the following address:

> Woody K. Lesikar
> West Houston Airport
> 18000 Groschke Rd
> Houston, Texas 77084

which is geographically located within the Southern District of Texas and the Houston Division thereof.

2. Defendant, Harris County, Texas is a political subdivi-

sion of the State of Texas which provides governmental services for citizens such as Plaintiff Lesikar who reside in Harris County. Harris County may be served with service of process by serving a copy of this Complaint on the Chief Governmental and Executive Officer of Harris County as follows:

Lina Hidalgo
Harris County Judge
1001 Preston, Suite 911
Houston, Texas 77002

Harris County employed Defendant Deputy Christopher D. Ross as a purported peace officer with responsibility to enforce the laws of the State of Texas as well as applicable federal laws, if any, over which Harris County exercises concurrent jurisdiction with federal jurisdiction pursuant to the Constitution and federal statutes. Harris County provided Deputy Christopher D. Ross with personal property used by Deputy Ross for purposes of law enforcement including the illegal arrest and incarceration of Plaintiff Lesikar which is complained of herein.

3. Defendant Deputy Christopher D. Ross is a purported law enforcement officer hired to act in the capacity of a Deputy Sheriff of the Harris County Sheriff's Department which is an agency or instrumentality of Defendant Harris County which Harris County claims it operates to enforce the laws of the State of Texas and applicable federal laws over which Harris County has concurrent enforcement jurisdiction. Deputy Ross is sued in his individual and official capacities for commission of the acts as well as the omissions complained of herein which violated the Federal Civil Rights and other rights of the Plaintiff Lesikar and resulted in actual damages suffered by the Plaintiff. Deputy

2

Ross can be served with personal service of process by serving him with a copy of this Complaint at the following address:

Deputy Christopher D. Ross
c/o Harris County Sheriff's Department
1200 Baker Street
Houston, TX 77002

4.   Plaintiff Lesikar sues for violation of his civil rights which he suffered as the result of acts and omissions committed by Deputy Ross while Deputy Ross was acting under color of state law.  Plaintiff Lesikar brings this action pursuant to 42 U.S.C. § 1983 through 1988 et seq.

5. This case raises claims for relief under federal law which present a federal question pursuant to 28 U.S.C. § 1331. This Court has subject matter jurisdiction over Plaintiff Lesikar's civil rights claims because they present a federal question as defined by 28 U.S.C. § 1331.

6.   Additionally, the laws of the State of Texas provide that the State of Texas has waived its sovereign immunity from tort liability where, as here, a citizen suffering injury has sustained injuries as the result of negligent use of tangible personal property owned by the State or its political subdivisions such as Harris County.  This Court has pendent jurisdiction over Plaintiff Lesikar's state law tort claims under the Texas Tort Claims Act.  Texas Civil Practice and Remedies Code § 101.021(2). Plaintiff Lesikar alleges and will prove that he has provided actual notice to Defendant Harris County and Defendant Deputy Ross of both the fact of his injuries  and the actual damages he suffered as the result of such injuries within six months of February 11, 2022, the date Plaintiff Lesikar sustained

such injuries. Plaintiff Lesikar also alleges and will prove that Defendants Harris County and Deputy Ross had actual notice of the fact of his injuries as well as the extent of damages Plaintiff Lesikar suffered as the result of the acts of the Defendants prior to the date Plaintiff filed this Complaint.

7.   All the acts complained of herein occurred in Harris County, Texas.   Harris County, Texas is within the territorial confines of the Houston Division of the United States District Court for the Southern District of Texas.

8.   This Federal District Court has personal jurisdiction over the Defendants and Defendants are amenable to personal service of process issued by this Court.   This Court has subject matter jurisdiction over Plaintiff Lesikar's civil rights claims pursuant to Title 28 U.S.C. § 1331.   This Court has pendent jurisdiction over Plaintiff Lesikar's state law tort claims pursuant to Texas Civil Practice and Remedies Code § 101.021(2). Venue is proper in the Southern District of Texas and the Houston Division.

## STATEMENT OF FACTS IN SUPPORT OF COMPLAINT

II.

1.   For many years previous to the filing of this Complaint, Plaintiff, Woody K. Lesikar, has operated and managed the airport property in Harris County, Texas described as follows:

West Houston Airport
18000 Groschke Rd
Houston, Texas 77084.

The above airport property was and is owned by West Houston Airport Corporation, a Texas business corporation.

4

2.   The operations of the airport are "clothed with the public interest."   The airport does not receive public grants. From time to time plane crashes and other related aircraft damages have occurred on or in close geographic proximity to the West Houston Airport which is operated by West Houston Airport Corporation. Both the Federal Aviation Administration as well as the previous Harris County Air Search and Recovery, a division of the  Sheriff's Department (now defunct) called on Plaintiff Lesikar to provide logistics and air search and rescue benefits and assistance, Plaintiff Lesikar, prior to the events surrounding his arrest and leading up to the filing of this Complaint, always provided such assistance at the request of the FAA and/or Harris County Air Search and Recovery using the Airport's own safety and air rescue equipment and hangar, fuel, and other services when necessary.   Further Plaintiff Lesikar never acted alone in providing such assistance.   Plaintiff Lesikar has always provided such assistance on behalf of Harris County, the Federal Aviation Administration, Westlake Fire Department, and other law enforcement agencies.

3.   On Friday, February 11, 2022 at 7:25 PM Lesikar was at his apartment on the West Houston Airport when he received a call at 7:35 PM asking if Lesikar knew about an aircraft crash at the airport. The call was from an employee, Grant  Orr who informed Lesikar that a plane had gone down on the golf course adjacent to the airport. Lesikar immediately got dressed, picked up his key fob and phone and headed to his vehicle.

4.   Lesikar drove north to the end of the airport runway

where Lesikar saw the Westlake Fire Department in route. Curtis
Hathaway, the mechanic working for Lesikar at the airport was
there also.

5.   Lesikar arrived at the end of the runway nearest the
site of the crash.   Mr. Greg Boyles (Hangar A1) stated that he
was glad that Lesikar had arrived. Grant Orr and Lesikar, each in
their own vehicles, escorted the fire department across the
runway and over the Bear Creek Diversion, a low concreted dam and
roadway that passed from the airport side to the golf course over
Bear Creek.  Lesikar brought along firemen in his vehicle as it
was able to go down the embankment and up the other side to the
crash site. Lesikar let the firemen out and proceeded to pick up
additional firemen and their equipment opening up the back of his
SUV so the firemen could put extra equipment inside.  Lesikar and
the firemen then went to the scene again. Lesikar did this a
third time and then focused on the crashed plane and its occu-
pants.

6. Lesikar left his vehicle's lights on the crashed plane to
illuminate the aircraft as that was all the light that was avail-
able from Grant Orr's truck and Lesikar's SUV. Lesikar then
proceeded to discuss with the firemen the structure of the plane
as they were starting to cut into the aluminium frame of the
aircraft.  Lesikar is an FAA Certificated Airframe and Powerplant
mechanic and ATP pilot. The occupants were alive and the woman
was wailing and was in shock and agony.  A true and correct copy
of the incident report of the Westlake Volunteer Fire Department
describing the crash and the rescue services rendered is attached

hereto, marked Exhibit A, and is incorporated by reference.

7.   As Lesikar was discussing the aircraft and structure with an EMS and fireman, an officer came from Lesikar's back side and said that Lesikar was interfering.

8.   Lesikar then was gesturing with his hands as to what he was doing and identified himself. The officer told Lesikar to put his hands down.  Lesikar did not react to this command promptly enough to suit this officer.  The officer informed Lesikar that he was "interfering," was under arrest for interfering and then placed handcuffs on Lesikar.  The officer then physically moved Lesikar away from the crash site another fifteen or twenty feet. The officer forced Lesikar to kneel down on his knees facing the crash and the some twenty or more first responders.  Lesikar had just undergone knee surgery a few months before and Lesikar was hurting. There were two or three other officers who witnessed Lesikar's arrest. Lesikar was forced to stay in that kneeling position for about an hour. During that time Lesikar's hands began to hurt and his wrists were in pain.

9.   A spectator at the scene came up to Lesikar and asked him what happened. The spectator may have known Lesikar. The spectator asked if Lesikar was cold and the spectator then zipped up Lesikar's jacket while he was on his knees.

10.   Lesikar saw another Deputy cross over in front of him. The other Deputy said something about the DA. Then another offi-cer, a large man went across in front of Lesikar and told the arresting Deputy Ross, that there was a lot of media at the front gate of the country club and "not to stop" at the entrance.

Deputy Ross put Lesikar on a golf cart and took him to the Depu-
ty's vehicle which was on the north side of the country club
house.

11.   The Deputy's vehicle was parked among about fifteen or
twenty other Harris County and Fire Department equipment and
vehicles. The Deputy then put Lesikar in the back seat of the
Deputy's patrol car and, while doing so, broke Lesikar's glasses.
The Deputy then strapped Lesikar down to the seat belt from
behind through the handcuffs and "locked" the safety belt behind
Lesikar.  Lesikar's arms and hands were behind him attached to
the safety belt. Lesikar was concerned about being locked up and
the inability to move at all in case of an accident or other
emergency.

12.   Deputy Ross then backed out and proceeded out the front
gate of the country club. Deputy Ross exited the gate and stopped
the patrol car to talk with a woman from the media who had come
up and started asking him questions.  Lesikar could not hear it
all but there was some back and forth conversation for several
minutes. Then the Deputy left the scene and went to the Clay Road
office where he met up with another officer.  Deputy Ross said
that the computer was not coming up in his vehicle and that he
had to wait until it did. The computer never came up until Deputy
Ross started towards downtown.  Deputy Ross was in a hurry and
while on Interstate 10 Highway, he was driving between 85 and 90
mph, weaving through traffic. Lesikar was very concerned during
this time about his safety.

13.   Deputy Ross got to the Sheriff's holding facilities

(jail) and got Lesikar out of the vehicle. Lesikar mentioned to Deputy Ross that Lesikar's hands were hurting from the tightness of the handcuffs.  Deputy Ross proceeded to bring Lesikar into the facility where Lesikar's belongings were bagged and Lesikar removed his shoes and socks for further inspection. Deputy Ross then told Lesikar to go and sit down on the blue chairs which Lesikar did. There were a lot of other people in the waiting area and very few chairs. Lesikar waited until Deputy Ross called him about forty-five minutes later.  Deputy Ross then brought Lesikar over and asked some questions while Deputy Ross filled out some forms.

14.   Once that was done Deputy Ross sent Lesikar over to the booking area where Lesikar's picture (mug shot) was taken and his finger prints, hand prints, palm prints, sides etc. were taken. Once that was over, Lesikar was instructed to go be seated in the same area in the blue seats.

15.   There were a number of outbursts from individuals in that area. There were a number of Deputies all around the area and some were writing up forms and working behind the counter.

16.   Lesikar waited until he was called again about forty-five minutes or so later. The officer told Lesikar to follow him. The officer placed Lesikar in a solitary confinement room by himself and with a pay phone. The officer said Lesikar could use it to make a call. Lesikar tried to make calls per the written instructions on the phone and also from the voice prompts, but could not get anyone to reply. Lesikar never was able to get any outgoing calls answered through the JAIC'S phone.

17.   Later another deputy came and escorted Lesikar to another area where there were about fifty individuals waiting. Lesikar appeared before one deputy who asked a number of questions and then told Lesikar to go sit down in the blue seated area and wait. During that interval there were a number of outbursts and one man was calling out the deputy. Lesikar tried to use the phone in that area and could not get an outside line.

18. At about 2:21 AM in another area of the holding facility where Lesikar was assigned, Lesikar was allowed to use his cell phone and he made a call to his daughter, Shelly. Approximately one hour later, Shelly came and picked up her dad.

19.   Lesikar was given a slip of paper, like a sales slip. Lesikar was told that the case had been dismissed. Lesikar did not receive any other documentation.

20.   After his release from incarceration Plaintiff Lesikar sought medical treatment for his handcuff injuries which he received as the result of his arrest, transport to jail, and incarceration. Lesikar received treatment from physician Dr. Victor Arellano.  Physician Arellano confirmed that in his opinion based on reasonable medical probability, Lesikar had suffered peripheral nerve damage and injury in his wrists and hands as the result of Deputy Ross's use of the Harris County handcuffs. A true and correct copy of the Plaintiff Lesikar's medical records will be produced as part of voluntary disclosures of discovery under Federal Rule of Civil Procedure Rule 26.  Lesikar also had to purchase a new set of glasses to replace the  ones broken by Defendant Deputy Sheriff Ross.  A copy of the receipt

showing the purchase of new glasses is attached hereto, marked
Exhibit A, and is incorporated by reference.

21.   Plaintiff Lesikar may undergo further diagnosis and
treatment during the course of this law suit.

22.   Lesikar sues in this case for actual damages for depri-
vation of federal civil rights guaranteed to Lesikar under the
First, Fifth and Fourteenth Amendments to the United States
Constitution as well as actual damages in the form of past,
present, and future physical disability, pain and suffering,
mental anguish, property damage, and other damages.

23.   Plaintiff Lesikar also sues for an award of punitive
damages against Defendant Deputy Ross.  Defendant Deputy Ross's
actions which violated Plaintiff Lesikar's civil rights were
committed intentionally and with malice by Deputy Ross or were
committed by Deputy Ross in total and gross disregard for the
rights and physical well being of Plaintiff Lesikar.

**FIRST CAUSE OF ACTION - VIOLATION OF CIVIL RIGHTS
(42 U.S.C. § 1983-1988, ET SEQ.)**

III.

1.   Plaintiff Lesikar realleges all the allegations con-
tained in Paragraphs I and II as if fully set forth herein.

2.   Defendants, Harris County and Deputy Ross, in his offi-
cial and individual capacities, committed the following
violations of Plaintiff Lesikar's civil rights which caused the
following damages and entitle Lesikar to recover damages against
the Defendants:

**3. FALSE ARREST:**

3.1.   Plaintiff Lesikar was contacted by government offi-

cials employed by West Lake Community Fire Department and in-
formed of the air crash which occurred just across Bear Creek
from the end of an airport runway.

3.2. EMS and West Lake requested assistance from Lesikar in
reaching the crash site as they lacked the necessary equipment to
enable them to get to the scene.  EMS and West Lake were unable
to obtain the necessary equipment to effect rescue and safeguard-
ing of the passengers of such crashed aircraft within any reason-
able period of time as required by air search and rescue stan-
dards.  Both EMS and West Lake specifically requested assistance
from Lesikar and his mechanic which would include use of airport
air search and rescue equipment including, but not limited to, a
four wheel drive vehicle capable of carrying personnel from a
paved road or runway to the crash site which was off road and on
uneven terrain.

3.3.  By requesting the assistance described above, the
public entities West Lake and EMS "deputized" Plaintiff Lesikar
and clothed him with the authority of acting as an invited agent
of the State or County to effect the rescue of the endangered
passengers inside the crashed aircraft who were not yet dead, but
were in danger of dying from fuel ignition occurring due to the
crash and failure to render immediate aid and medical assistance.

3.4. Plaintiff Lesikar had a "privilege" recognized by
common law to act in conjunction with the two public entities,
West Lake and EMS, to effect the air rescue at the crash site of
the entrapped aircraft passengers.  Defendant Ross arrested
Lesikar on both the false claim and pretextual basis that Lesikar

12

was interfering with Deputy Ross' investigation of the crash site
and that Lesikar failed to obey the lawful instructions of a law
enforcement officer engaged in that officer's lawful duties.

3.5  Instead of interfering with Deputy Ross at the crash
site, the evidence in this case will show that Defendant Deputy
Ross grossly interfered himself with the air rescue that was
already underway when he arrived.

3.6.  Defendant Deputy Ross will be unable to produce any
facts which prove that the Harris County Sheriff's Department or
Deputy Ross were in lawful or legally-legitimate control of the
crash site when Harris County law enforcement arrived.  Nor will
Harris County or Defendant Deputy Ross be able to prove that they
ever took control of the site and the air rescue operations that
were underway before Defendant Deputy Ross arrested Lesikar for
purportedly interfering with an officer.

3.7.  There was no probable cause for Lesikar's arrest for
"interfering."  Defendants Deputy Ross and Harris County had no
exclusive authority over the site of the crash or over the air
rescue operation that was ongoing when Harris County Sheriff's
Department and its Deputies arrived.

3.8.  Further Plaintiff Lesikar alleges and will prove that
under air search and rescue standards for a crash site where
rescue operations are ongoing, those conducting such operations
must be allowed to proceed with such operations unhindered by
arriving law enforcement who are tardy to the scene.  Unless such
authorities can safely take over the ongoing air rescue opera-
tions and provide proficient rescue services equal to or superior

to those services and support already in progress and being provided which will insure the safety of trapped passengers and will not result in the increased risk of harm or injury due to interruption or delay, such arriving officers must not interfere with ongoing air rescue and survival operations.

3.9.   Defendants Harris County and Deputy Ross knew or should have known of all of the above standards and protocols which are supported by both applicable federal regulations and the laws of the State of Texas pertaining to aviation related EMS services.  Plaintiff Lesikar further alleges and will prove that Harris County, Texas has adopted all of the  air search and rescue standards and EMS regulations referenced above as the "policy" of Harris County in carrying out Harris County's law enforcement operations including air crash rescue and investigation.

3.10.   Defendants grossly violated all of these standards. Plaintiff Lesikar's arrest for "interference" was both assumed and pretextual in that there was no probable cause to believe that he ever interfered with any legitimate activity nor disobeyed any lawful command of either Defendant Harris County or Deputy Ross.  Plaintiff further alleges that while Harris County had adopted a policy of adherence to all air search and rescue standards and EMS regulations in its operations Harris County authorized Deputy Ross to violate Harris County's own policy and approved Plaintiff Lesikar's wrongful arrest.  By such approval Harris County adopted a policy which approved the violation by Deputy Ross of Harris County's standing policy of non-interfer-

ence and subsidiary cooperation.

3.11. Under all of these facts and circumstances, Plaintiff Lesikar's arrest was illegal and violated Section 1983 of the Civil Rights Act.  To the extent the actions of Deputy Ross represent the policy and custom of Harris County, approved or tolerated on a repetitive basis, by its Chief governing or executive officer, the Harris County Judge and the Harris County Commissioner's Court, Harris County should be held jointly and severally liable for Plaintiff Lesikar's wrongful arrest committed by Deputy Sheriff Ross.  Harris County by its actions ratified the violations of civil rights committed by Defendant Deputy Ross by instructing and/or permitting that Deputy to take control of an ongoing air rescue and survival operation which he was incompetent to manage, direct or control.  If the actions of Deputy Ross represent the repetitive custom of Harris County in handling air crash scenes and investigations as well as rescue operations, then Lesikar suffered violations of his civil rights as the result of such Harris County custom, usage, or policy and Harris County ratified the acts committed by Defendant Deputy Ross which violated Lesikar's civil rights.

3.12.  Plaintiff Lesikar should recover actual damages against Defendants Harris County and Deputy Sheriff Ross, both jointly and severally, for past, present and future mental anguish, and property damage in the amount of at least $1,500,000.00.

3.13.  The acts of Deputy Sheriff Ross were committed intentionally and with malice or committed in gross disregard of the

rights and physical well being of Plaintiff Lesikar.  Plaintiff Lesikar should recover punitive damages against Deputy Sheriff Ross in the amount of $5,000,000.00.

3.14.  Plaintiff Lesikar should also recover attorney's fees under the Civil Rights Act against Harris County and Deputy Ross in the amount of at least $500,000.00 pursuant to U.S.C. § 1988.

**4.  FALSE IMPRISONMENT:**

4.1.  In addition to the acts complained of under "false arrest" above, Plaintiff Lesikar alleges and will prove that he was falsely imprisoned by Harris County and Deputy Ross without any probable cause.  In addition to arresting Lesikar at the scene of the air crash site and air rescue operations, Defendants detained Lesikar in handcuffs at the scene for one hour, illegally confined Lesikar in Deputy Ross's patrol car for at least one hour including the high speed drive by Deputy Ross to the Harris County jail, and then further confined Lesikar illegally in the Harris County jail for four (4) hours after which Lesikar was released when Deputy Ross could not get the District Attorney's office to accept his bogus, illegal "interference" charges.

4.2.  All of these actions constituted false imprisonment. Lesikar incorporates his claims for damages against Defendants described in Paragraph 3.12 above in support of his claim for damages for false imprisonment.

**SECOND CAUSE OF ACTION -- TEXAS STATE TORT CLAIMS ACT NEGLIGENT USE OF TANGIBLE PERSONAL PROPERTY OWNED BY HARRIS COUNTY**

**IV.**

1.  Plaintiff realleges all of the allegations contained in

Paragraphs I, II, and III as if fully set forth herein.

2.   Plaintiff Lesikar alleges and will prove that Defendant Deputy Sheriff Ross negligently employed and used handcuffs with excessive restraint on the person of Plaintiff Lesikar which, due to excessive force and restraint, caused Plaintiff Lesikar physical injuries and damages as described in Paragraph 3.12 and 3.13 above.

3.   Plaintiff Lesikar alleges and will prove that the handcuffs in question were issued to Defendant Deputy Sheriff Ross by Harris County and that such handcuffs were and are tangible personal property owned by the governmental unit -- the County.

4.   Defendant Deputy Sheriff Ross acted negligently by excessively tightening and by failing to properly adjust the handcuff restraints which Deputy Sheriff Ross placed on Plaintiff Lesikar's wrists and hands.

5.   Defendant Deputy Sheriff Ross was negligent in the use of the handcuffs in question as a physical restraint.

6.   The negligence of Deputy Ross was the proximate and legal cause of Lesikar's injuries.

7.   Lesikar should recover the actual damages described in Paragraph 3.12 above as damages against Defendants under the Texas Civil Practice and Remedies Code Section 101.021(2).

**8.   EXCESSIVE FORCE AND RESTRAINT DURING ARREST:**

8.1. Plaintiff alleges and will prove that the use of handcuffs as a means of restraining criminal suspects is and was well known to be a potential cause for serious bodily harm and damage including permanent nerve damage and disability.

17

8.2.   National police standards governing the use of hand-cuff restraints contain policies and procedures which are not only mandatory, but must be followed in order to prevent harm to suspects who are being arrested, detained, transported, and incarcerated.

8.3.   Plaintiff Lesikar alleges and will prove that Defendant Deputy Ross negligently violated such standards by using handcuffs with excessive restraint against Plaintiff Lesikar resulting in permanent nerve damage to Lesikar's wrists and hands.   Defendant Deputy Ross failed to take any precautionary measures necessary to loosen and adjust the handcuffs so as to insure that the suspect Plaintiff Lesikar would not suffer injury.   Defendant Deputy Ross failed to act as a reasonable and prudent peace officer in his use of handcuffs on Plaintiff Lesikar's hands and wrists with excessive restraint.

8.4.   To the extent Harris County approved and authorized Deputy Ross's use of such excessive handcuff restraint and/or to the extent it is proven in this case that Harris County issued the handcuffs in question to Defendant, Deputy Ross, and empowered him to use the handcuffs in the arrest, detention, transportation, and incarceration of Plaintiff Lesikar, Defendant Harris County should be held jointly and severally liable for Defendant Deputy Ross's actions.

8.5.   Plaintiff Lesikar should recover actual damages against Defendants, Harris County and Defendant Deputy Ross, for past, present, and future, physical disability, pain and suffering, and mental anguish, as well as property damage and other

damages in the amount of $1,500,000.00 for the negligent acts of Defendant Deputy Sheriff Ross and the negligent use of tangible personal property (handcuffs) committed by Defendant Deputy Sheriff Ross in the course and scope of his authorized employment as a deputy sheriff of Harris County, Texas who arrested Lesikar.

**CONCLUSION**

WHEREFORE, ABOVE PREMISES CONSIDERED, Plaintiff Lesikar requests that this Court entertain this Complaint and, after due consideration of same, that this Court enter final judgment after trial or other disposition: (1) awarding Plaintiff Lesikar actual damages against Defendants, Harris County and Deputy Ross, both jointly and severally, in the amount of $1,500,000.00 for violations of Plaintiff Lesikar's civil rights as pled for herein; (2) awarding Plaintiff Lesikar punitive damages against the Defendant Deputy Ross for his violation of Plaintiff Lesikar's civil rights as complained of herein in the amount of $5,000,000.00; (3) awarding Plaintiff Lesikar actual damages against the Defendants, Harris County and Deputy Ross, for violation of the Texas State Tort Claims Act and negligence in the use of tangible personal property owned by Harris County in the amount of $1,500,000.00; (4) awarding Plaintiff Lesikar a reasonable attorney's fee against the Defendants, Harris County and Deputy Sheriff Ross, in the amount of at least $500,000.00 for the successful prosecution of this action under 42 U.S.C. § 1988; and (5) awarding Plaintiff Lesikar such other and further relief, both in law and in equity, to which he may show himself to be justly entitled.

Respectfully submitted,

/s/ Joe Alfred Izen, Jr.

_____
Joe Alfred Izen, Jr.
Attorney for Plaintiff
TBC # 10443500
5526 McKnight Street
Houston, Texas  77035
(713) 668-8815
(713) 668-9402 FAX
jizen@comcast.net

LESIKAR.OP/TK526