United States District Court
Southern District of Texas
**ENTERED**
July 15, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WOODY K. LESIKAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-00470 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Before the Court are the defendants', Harris County, Texas, and Deputy Sheriff Christopher Ross, motions to dismiss the first amended complaint (DEs 29, 30 & 27). The plaintiff, Woody Lesikar, has not responded, but he did respond to previous motions to dismiss (DE 14). After reviewing the motions, the pleadings, and the applicable law, the Court determines that the defendants' motions should be **GRANTED in part** and **DENIED in part**.

### II.   FACTUAL BACKGROUND

Woody Lesikar is a 75-year-old operations manager at the West Houston Airport. Over the years, Lesikar has assisted with air search and rescue services at the request of the Federal Aviation Administration and Harris County Air Search and Recovery. On the evening of Friday, February 11, Lesikar received a call about a plane crash on the golf course adjacent to his airport. Lesikar immediately drove to

the airport, where he found firefighters congregating. Lesikar loaded several firefighters and their equipment into his vehicle and took them to the golf course where the plane crashed. Lesikar went back and forth ferrying firefighters three times before settling in at the crash site. The plane's occupants were in shock and great pain, but they were alive.

At the crash site, Lesikar continued to help. He left his vehicle's lights on to illuminate the plane while the rescuers worked. He also contributed his expertise; Lesikar is a Federal Aviation Administration certified airframe and powerplant mechanic, as well as an Airline Transport Pilot. He was discussing the structure of the crashed plane with the firefighters as they prepared to cut into it to extract the passengers when Deputy Ross approached. Deputy Ross told Lesikar that he was interfering with the operation. Lesikar identified himself and gestured with his hands to show what he was doing at the site. Ross commanded Lesikar to put his hands down and told him that he was under arrest for interference. Ross handcuffed Lesikar and made him kneel down away from the crash site. Since Lesikar had recently had a knee surgery, this was painful as well as humiliating. Before long, his hands and wrists also began to hurt.

Eventually Deputy Ross loaded Lesikar—still handcuffed—into his patrol car, breaking Lesikar's glasses in the process. Deputy Ross then drove aggressively to the jail, weaving through traffic and exceeding 85-90 miles per hour. When they arrived, Lesikar told Deputy Ross that the handcuffs were too tight and were hurting his hands. Lesikar was processed and kept at the jail until his daughter picked him up

around 3:30 a.m. As he left, Lesikar was told that his case had been dismissed. A few days later, a doctor told him that his wrists and hands had suffered peripheral nerve damage and other injuries from the handcuffs. Lesikar sued Harris County and Deputy Ross for violations of his constitutional rights under the Fourth Amendment.

### III. CONTENTIONS OF THE PARTIES

Harris County alleges that it is immune from the plaintiff's state law claims, and that the federal claims do not satisfy *Monell*'s requirements for Section 1983 claims. Deputy Ross argues that qualified immunity shields him from federal claims, and that the state claims against him cannot coexist with the plaintiff's claims against Harris County.

### IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits an action's dismissal for lack of subject matter jurisdiction. A party invoking the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992). In making its ruling, the court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2.

If the Court has jurisdiction over any claims, it will apply the 12(b)(6) standard to those claims. Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." "The plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## V. ANALYSIS & DISCUSSION

### A. Claims against Harris County

#### 1. State law claims

The plaintiff's state law claims implicate sovereign immunity. "Sovereign immunity is jurisdictional." *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). "Sovereign immunity protects Texas and its political subdivisions . . . from suits for money damages." *St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754, 762–63 (5th Cir. 2023). The plaintiff bears the burden of establishing the state's waiver of immunity. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

The Texas Tort Claims Act ("TTCA") provides this waiver. Specifically, the TTCA waives sovereign immunity for personal injuries proximately caused by a negligent employee acting within the scope of his employment, if the harm arises from

the use of tangible personal property. TEX. CIV. PRAC. & REM. CODE § 101.021(2). However, "[t]he TTCA does not apply to claims arising out of an intentional tort." *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009). Indeed, "[a] plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Harris Cnty., TX v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App. 2005).

Thus, the plaintiff cannot sue Harris County for the allegedly false arrest and imprisonment itself, which were intentional acts. But the plaintiff has also alleged that Deputy Ross "acted negligently by excessively tightening and by failing to properly adjust the handcuff restraints," and that "this negligence of Deputy Ross was the proximate and legal cause of Lesikar's injuries." The plaintiff does not allege that Deputy Ross intentionally tightened the handcuffs excessively, and nothing in the alleged facts suggest that the plaintiff is impermissibly recasting an intentional tort claim as one of negligence. Thus, Harris County is not immune to the excessive force claim as it relates to the handcuffs.

2. *Federal Claims*

The plaintiff must satisfy the *Monell* requirements to sue the County under Section 1983. "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). *Monell* mandates that "[t]o establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was

the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

The plaintiff does not respond to the County's contention that he has not identified a policy or a policymaker. His amended complaint does include allegations of a failure to make policy and deliberate indifference, but they are highly generalized and devoid of any specifics. Indeed, his allegations rely on the premise, "[t]o the extent the actions of Deputy Ross represent the policy and custom of Harris County . . . its Chief governing or executive officer, the Harris County Judge and the Harris County Commissioner's Court . . ." This vague, blanket speculation does not suffice to identify a policymaker who caused his injuries. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) ("A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'").

The plaintiff's allegations of failure to train or supervise fare no better. To state such a claim, the plaintiff must demonstrate that "1) the [defendant] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur County,* 245 F.3d 447, 459 (5th Cir. 2001). "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously

likely to result in a constitutional violation.'" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003).

The plaintiff does not demonstrate a pattern of violations, or otherwise explain the likelihood of recurrence. The plaintiff blames Harris County's "failure to make and enforce a policy of non-interference which created a high and unacceptable risk that private deputized members assisting law enforcement including air crash safety and rescue operations would be arrested and falsely imprisoned." But Harris County is not obliged to create a policy for every conceivable scenario. An absence of policies directly addressing this precise occurrence does not rise to deliberate indifference. Accordingly, the plaintiff has not made a sufficient Section 1983 claim under *Monell*.

## B. Claims against Deputy Ross

### 1. State Law Claims

The plaintiff's state law claims against Deputy Ross cannot coexist with his claims against Harris County. The plaintiff sues Harris County under the Texas Tort Claims Act, which specifies that claims against a government employee are generally subsumed by claims against the governmental unit:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed.

Tex. Civ. Prac. & Rem. Code 101.106(f). The plaintiff concedes that if Deputy Ross's conduct was within the scope of his employment, the state law claims against him must be dismissed. By moving to dismiss under 101.106(f), Deputy Ross has

judicially admitted that the conduct at issue was within the scope of his employment. *See Ledesma v. City of Houston,* 623 S.W.3d 840, 848 (Tex. App. 2020) (holding that by "moving to dismiss claims against its employee under subsection (e), the governmental unit judicially admits that the employee was acting in the scope of employment and agrees to vicariously defend its employee."). Accordingly, the state law claims against Deputy Ross are dismissed.

   2. *Federal Claims*

The federal claims against Deputy Ross implicate qualified immunity. Qualified immunity is a shield from liability for "'government officials performing discretionary functions ... as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Good v. Curtis,* 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton,* 483 U.S. 635, 638 (1987)). "When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must determine whether 'the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (quoting *Wicks v. Miss. State Emp't Servs.,* 41 F.3d 991, 994 (5th Cir. 1995)). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id*.

There are two steps to the qualified immunity analysis. First, the Court must determine "whether the plaintiff has adduced facts sufficient to establish a

constitutional or statutory violation." *Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir. 2009). Then, Court must decide "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (quoting *Freeman v. Gore,* 483 F.3d 404, 411 (5th Cir. 2007)). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (cleaned up). Even on a motion to dismiss, the plaintiff has the burden to rebut qualified immunity. *Id.* To sum up, the Court views the facts in the light most favorable to the plaintiff, but from the perspective of the officer. *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004).

The plaintiff has borne his burden to rebut Deputy Ross's qualified immunity defense. Lesikar asserted a violation of his constitutional right to be free from false arrest under the Fourth Amendment. Such a right is clearly established; "This circuit held that []he had such a right long before the incident in question." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995). The question, then, is whether Deputy Ross's action were objectively unreasonable.

Because the Court must view the facts from Deputy Ross's perspective, the Court temporarily ignores the fact that Lesikar ferried firemen to the accident site in his own vehicle three times. Nevertheless, based on the facts alleged at the time of Deputy Ross's arrival on the scene, Deputy Ross did not have probable cause to arrest Lesikar. Lesikar was discussing the aircraft's structure with an EMS and a fireman

when Deputy Ross told him he was interfering. Lesikar's identifying himself did not deter Deputy Ross. Deputy Ross commanded Lesikar to put his hands down, which were up because he was gesturing to describe the aircraft and his position. There is no indication that Lesikar was distracting or obstructing the rescue effort, or in any other way interfering. On the contrary, even the snippets that Deputy Ross saw indicated that Lesikar was helping rather than hindering. It does not require a wild inference to presume that Lesikar's expertise and his knowledge of the aircraft's structure was helpful to rescuers about to cut into that aircraft to rescue frightened and imperiled passengers.

Based on these facts, a reasonable officer would not have arrested Lesikar, depriving Lesikar of his liberty and the rescuers of his expertise. The only allegation supporting a glimmer of probable cause is Lesikar's failure to put his hands down immediately upon Deputy Ross's command. But no reasonable police officer would determine that this alone constitutes probable cause for interference. The Court concludes that Deputy Ross's conduct was objectively unreasonable. Accordingly, he is not entitled to qualified immunity.

## VI.  CONCLUSION

Based on the foregoing analysis and discussion, the defendants' motions are **GRANTED in part** and **DENIED in part**. The plaintiff's excessive force claim against Harris County for his injuries from the handcuffs may proceed, as may his federal claims against Deputy Ross. The remaining claims are dismissed with prejudice.

It is so **ORDERED**.

SIGNED on July 15, 2024, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge